**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ZIILABS INC., LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:14-cv-203-JRG-RSP |
| | § | |
| SAMSUNG ELECTRONICS CO. LTD.; | § | |
| SAMSUNG ELECTRONICS AMERICA, | § | |
| INC.; SAMSUNG | § | |
| TELECOMMUNICATIONS AMERICA, | § | |
| LLC; SAMSUNG AUSTIN | § | |
| SEMICONDUCTOR, LLC; AND APPLE | § | |
| INC. | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM ORDER</u>

Before the Court is Defendants Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, LLC, Samsung Austin Semiconductor, LLC, and Apple Inc.'s Motion to Transfer Pursuant to 28 U.S.C. § 1404(a).  (Doc. No. 75.) Defendants assert that this case should be transferred to the Northern District of California. Plaintiff ZiiLabs Inc., Ltd., opposes transfer.  After considering the evidence and weighing the factors, the Court finds that transfer is not warranted in this case.

## BACKGROUND

This is a global patent dispute over graphics processing technology that is used in mobile devices, tablets, and desktop and laptop computers.  Half of this dispute centers on graphics processing units ("GPUs") for mobile devices and tablets.  (Doc. No. 75-7 ¶ 4.)  Those GPUs are designed and manufactured in at least the United Kingdom, South Korea, and Texas.  The other

half of this dispute centers on GPUs for computers. (Doc. No. 75-7 ¶ 4.) Those GPUs are designed and manufactured in at least Canada, Massachusetts, Texas, and California.

ZiiLabs is a Bermuda company and the current iteration of 3DLabs Inc., Ltd., which used to be a United Kingdom company and a pioneer in the computer graphics industry. (Doc. No. 88-1 ¶¶ 12–16.) Samsung Electronics Co. Ltd. ("SEC") is a Republic of Korea company that, among other things, designs and manufactures some of the accused devices and accused systems-on-chip ("SoCs") with GPUs. (Doc. No. 75-3 ¶ 3 ("SEC employees in Korea are responsible for developing, designing, and testing Samsung's SoCs containing GPUs.").) Three United States subsidiaries owned by SEC are involved in this case: Samsung Telecommunications America, LLC ("STA"), headquartered in Richardson, Texas; Samsung Austin Semiconductor, LLC ("SAS"), headquartered in Austin, Texas; and Samsung Electronics America, Inc. ("SEA"), headquartered in Ridgefield Park, New Jersey.[1]

STA serves as a sales division for SEC mobile devices in the United States. It imports and sells SEC mobile devices, tablets, and network infrastructure. (Doc. No. 88-3 at 32:13–15, 35:11–13.)[2] STA maintains financial records and tracks the number of SEC devices that are sold in this country. (Doc. No. 88-3 at 35:11–13, 37:11–18, 38:20–24.)

---

[1] Richardson, Texas, is partly located in the Eastern District of Texas. Austin, Texas, is located in the Western District of Texas. Ridgefield Park, New Jersey, is located in the District of New Jersey. The Court will use the abbreviations above when referring to the Samsung entities individually. The Court will use the abbreviation "Samsung" when referring to the Samsung entities collectively.

[2] The Court agrees with Samsung and Apple that their declarants are credible and rejects ZiiLabs' claim that "Mr. [Alok] Shah's declaration should to given no weight by the Court" because "Mr. Shah admitted he had not read the asserted patents, had not read the complaint, and had not read the infringement contentions." (Doc. No. 88 at 2 n.4.) The Court also rejects ZiiLabs' claim that Michael Raiford's and Catherine Morse's declarations are not credible. (Doc. No. 88 at 3 n.5.)

SAS serves as a chip fabricator for device-makers such as Apple. (Doc. No. 88-4 at 35:3–11.)[3] SAS manufactures SoCs for some of the Apple devices accused of infringement. (Doc. No. 88-4 at 35:3–11 ("Samsung Austin, we manufacture A3, A4, and A5."); Doc. No. 41 ¶ 15 ("Samsung has directly infringed and continues to directly infringe one or more of the claims of the '637 Patent by manufacture and sale of the Apple A4, A5, A6, A6X, and A7 SoCs with graphics processing systems.").) SAS does not manufacture SoCs for any of the Samsung devices accused of infringement. (Doc. No. 88-4 at 19:19–21 ("Q: Does SAS manufacture any SOCs found in current Samsung products? A: No.").) (*But see* Doc. No. 79-2 ¶ 5 ("I understand SAS has fabricated in the past and is presently fabricating blank silicon wafers into finished silicon wafers containing circuitry for certain Samsung SoCs in Austin, Texas.").) SAS does not develop or design chips. (Doc. No. 88-4 at 42:6–8.)

SEA serves as another sales division for SEC in the United States. SEA sells devices such as tablets and laptop computers. (Doc. No. 75-4 ¶ 4 ("SEA sells Samsung computer products and tablets in all districts throughout the United States."); Doc. No. 88-3 at 27:20–21 ("[T]he Wi-Fi-only tablets are sold through SEA.").)

Apple Inc. ("Apple") is a United States company with headquarters in Cupertino, California. Apple, among other things, designs, develops, and sells mobile devices, tablets, and laptop and desktop computers. Apple does not develop, design, or manufacture the accused GPUs. (Doc. No. 88-14 at 30:2–7 ("A: So, as it relates to the products that were in question in the matter, it is my understanding that Apple does not participate in the development of those graphics processors. We acquired them from the companies that are listed here."); Doc. No. 75-1 ¶ 8 ("The Accused Apple Products integrate third-party graphics processors and graphics

_____

[3] SAS manufactures only a portion of the chip, and then SAS ships the partially-completed chip to Korea where Samsung completes the process. (Doc. No. 88-4 at 31:1–10, 35:19–36:4.)

processing systems including graphics processing software and hardware of third parties Advanced Micro Devices, Inc., NVIDIA [Corp.], and Imagination Technologies.").)

Five third-party SoC or GPU makers are also relevant to this case: (1) ARM Holdings plc, a United Kingdom company that designs GPUs and SoCs; (2) Imagination Technologies Group plc, a United Kingdom company that designs GPUs on SoCs; (3) Qualcomm Inc., a United States company with headquarters in San Diego, California, that designs GPUs or SoCs; (4) NVIDIA Corp., a United States company with headquarters in Santa Clara, California, that designs GPUs; and (5) Advanced Micro Devices, Inc. ("AMD"), a United States company with headquarters in Sunnyvale, California, that designs GPUs. [4, 5]

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first step in a Court's transfer analysis is deciding "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

If that threshold is met, the Court then analyzes public and private factors relating to the convenience of parties and witnesses and the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re*

---

[4] San Diego, California, is located in the Southern District of California. Santa Clara, California, and Sunnyvale, California, are located in the Northern District of California.

[5] ARM designs the Mali GPUs. Imagination designs the PowerVR GPUs. Qualcomm designs the Snapdragon/Adreno GPUs. NVIDIA designs the GeForce GPUs. AMD designs the FirePro and Radeon GPUs. (Doc. No. 75 at 1 n.2; Doc. No. 75-5 ¶ 4.) The Court has no evidence as to whether NVIDIA or AMD design any SoCs that are accused in this case.

*Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Although the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

Timely motions to transfer venue should be "should [be given] a top priority in the handling of [a case]" and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Doc. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

**ANALYSIS**

**A.     Proper Venue**

Neither party disputes that the Eastern District of Texas and the Northern District of California are proper venues.

**B.     Private Interest Factors**

**1.     Relative Ease of Access to Sources of Proof**

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

Apple claims that its sources of proof are more accessible from the Northern District of California because most "of Apple's documents relating to the research, design, development, operation, marketing, advertising, and sales of the accused products are stored at or near Apple's headquarters in Cupertino, California." (Doc. No. 75 at 8–9.) These documents include "electronic and papers records" from employees with "unique relevant knowledge" about "the design and development of the graphics processors and graphics processing systems" and also include the "electronic and paper records" from employees with knowledge about the "marketing and sale" of the Apple products accused of infringement.  (Doc. No. 75-1 ¶ 11.)

Samsung claims that "very little" evidence is located in the Eastern District of Texas. (Doc. No. 75 at 9.)  Samsung claims that SEC in Korea possesses all of the "technical documents."  (Doc. No. 75 at 9.)  Samsung also claims that SAS in Austin does not possess any technical documents because SAS is a chip fabricator and does not design or develop the SoCs or GPUs accused in this case.  (Doc. No. 75 at 9.)  Samsung finally claims that SEA is located in

New Jersey, and that STA does not possess "unique technical documents relating to the accused SoCs or GPU functionality." (Doc. No. 75 at 9–10.)

On the whole, the Court finds that this factor is neutral as to transfer. The bulk of the technical sources of proof are located with Samsung and third-parties abroad. One third-party GPU-maker has technical sources of proof in California and Alabama. The Court also finds that this factor is neutral as to transfer because the financial sources of proof are in Texas, New Jersey, and California.

### Technical Documents

Neither party can seriously dispute that Samsung and third-party SoC and GPU-makers have the bulk of the relevant technical documents. Samsung has relevant technical documents because it designs SoCs with GPUs that are accused in this case. (Doc. No. 75-3 ¶ 3 ("SEC employees in Korea are responsible for developing, designing, and testing Samsung's SoCs containing GPUs.").) Third-party chip-makers also have relevant technical documents because "SEC engineers in Korea . . . select[] and sourc[e] GPUs for the accused products from third party suppliers" (Doc. No. 75-3 ¶ 3) and the Apple devices accused of infringement use GPUs from "NVIDIA, AMD, and Imagination" (Doc. No. 88-14 at 7:9–12).

The Court finds that the evidence shows that Samsung's technical documents are located in Korea and possibly in Texas. (Doc. No. 75-3 ¶ 3; Doc. No. 75 at 9–10 (stating that STA does not maintain "unique" technical documents in Texas).) The Court also finds that the evidence shows that Imagination's, AMD's, and NVIDIA's technical documents are in the United Kingdom, Canada, California, and Alabama.

Imagination supplies "graphics processing units ("GPUs") to Apple" and "graphics processing units ("GPUs") to Samsung Electronics Co. Ltd." (Doc. No. 75-2 ¶¶ 6, 8.) The only

evidence before the Court shows that Imagination designs these GPUs in the United Kingdom. Imagination states that "the design and development performed by Imagination for the Imagination Apple Processors took place outside of the United States." (Doc. No. 75-2 ¶ 6.) Imagination also states that "the design and development performed by Imagination for the Imagination Samsung Processors took place overseas." (Doc. No. 75-2 ¶ 8.)

The parties do not dispute that AMD has facilities in California, Texas, Canada, and Massachusetts. The parties also do not dispute that AMD has headquarters in Sunnyvale, California. (Doc. No. 75-8 at 1.) The parties' disagreement centers on the AMD facility that designs the GPUs accused of infringement. The evidence before the Court suggests that those GPUs are designed in Canada or Massachusetts.

The evidence shows that nine years ago AMD purchased ATI Technologies Inc., which was Canadian company that designed and developed computer graphics chips and boards. (Doc. No. 88-27 at 2; Doc. No. 75-7 ¶ 4 (accusing the "ATI/AMD Radeon . . . implemented in at least the following Samsung Products.").) ZiiLabs accuses the Radeon GPU of infringement, and the evidence shows that this GPU is designed in Ontario, Canada. (*See, e.g.*, Doc. No. 75-7 ¶ 4 ("Samsung Accused Products with [AMD] Radeon GPUs.").) AMD's Ontario facility employs a "product manager" for GPU products and also employs one of AMD's primary contacts with Apple. (Doc. No. 88-14 at 74:11–14 ("For AMD he said his primary contacts are in the Toronto, Canada area, as well as in Massachusetts."); Doc. No. 88-26 at 1 ("The GPU Product Manager is a critical role within AMD's Discrete Graphics Processor Business Unit with strategic focus on

growing AMD's share of the Mobile Graphics Processors across worldwide Mobile PC OEMs.").)[6, 7]

The Court finds NVIDIA has technical documents in California and Alabama. The parties do not dispute that NVIDIA is headquartered in Santa Clara, California, and also do not dispute that NVIDIA has facilities in fourteen other states. (Doc. No. 75-9 at 2–3.) Apple states that its primary contact with NVIDIA is located in California. But neither party has offered additional evidence on where the accused NVIDIA GeForce GPUs are designed. (Doc. No. 88-14 at 74:13–14 ("And for NVIDIA his primary contacts are in Santa Clara, California.").)

The Court notes, however, that ZiiLabs' has consistently claimed that James Deming, an inventor, works for NVIDIA in Alabama. (Doc. No. 88 at 6, 8; Doc. No. 103 at 4.) Samsung and Apple have not disputed this claim. (*See* Doc. No. 93.) Therefore, the Court accepts ZiiLabs' argument that Mr. Deming lives in Alabama, where he maintains technical documents

---

[6] Samsung and Apple claim that, for Apple products with AMD GPUs, the "design and development of the relevant portions of that product occurs in the NDCA with some activity in Toronto or Boston." (Doc. No. 93 at 3 n.7.) The Court finds this argument unsupported by the evidence. First, Apple does not cite evidence in support of this claim. Second, Apple has stated that it "does not participate in the development of those graphics processors. We acquired them from the companies that are listed here [including AMD]." (Doc. No. 88-14 at 30:1–7.) Third, Apple's witness, on redirect examination, stated several times that for AMD "those technical personnel that he interacts with are [in the] Toronto, Canada area, as well as in Massachusetts." (Doc. No. 88-14 at 75:12–18; Doc. No. 88-14 at 74:11–13 ("For AMD he said his primary contacts are in the Toronto, Canada area, as well as in Massachusetts.").)

[7] Samsung and Apple also claim that SAS's witness "confirmed" that Apple's SoCs are designed and developed in the Northern District of California. (Doc. No. 93 at 4 n.7 (citing Doc. No. 93-11 at 41:25–42:15).) The Court finds that this argument is unsupported by the evidence. SAS's witness stated that customers such as Apple send SAS schematic diagrams of chips before SAS begins to manufacture the chip. SAS's witness did not state that the chips in those schematics are designed in California. (Doc. No. 93-11 at 42:10–13.) Nor is that the most likely inference. Apple does not dispute that it has a SoC-related capabilities in Austin, Texas. For example, at least five-years ago, "Apple [] acquired a small Austin, Tex., company called Intrinsity, known for making zippy versions of a computer chip often found in mobile devices." (Doc. No. 88-15 at 1.)

relevant to when U.S. Patent No. 5,831,637 ("the '637 patent") was conceived and reduced to practice. (*See* '637 patent, at [75], [73], [22] (listing Mr. Deming, David Young, and Jeffrey Holt as inventors, the assignee as Intergraph Corporation in Huntsville, Ala.., and a filing date of May 1, 1995).) ZiiLabs' predecessor, 3DLabs, acquired Intergraph, the assignee of the '637 patent in 2000. (Doc. No. 88-1 ¶ 15.)

The Court addresses two final matters relating to the sources of technical proof. First, neither party has provided any meaningful evidence on where ARM and Qualcomm develop and design their respective SoCs or GPUs. The parties do not dispute that Qualcomm is headquartered in San Diego, California, but also do not dispute that it has a major chip design and development facility in Raleigh, North Carolina. (Doc. No. 75-10 at 2; 88-24 at 1–2.) The parties also do not dispute that ARM is headquartered in the United Kingdom, but similarly do not dispute that ARM has facilities in Texas and California. (Doc. No. 75 at 5; Doc. No. 75-11 at 1–4.)

Second, Samsung and Apple claim that Intel has technical sources of proof in Santa Clara, California, because ZiiLabs subpoenaed Intel seeking documents relating to conception, reduction to practice, and inventorship of all of the asserted patents. (Doc. No. 75-12 at 5, 10.) ZiiLabs responds that its subpoena was not directed at Intel information in Santa Clara, but "directed to documents from Intel employees based *in the UK*." (Doc. No. 88 at 10.)

The Court finds that this dispute does not alter the transfer analysis. On one hand, ZiiLabs' subpoena was sent to Intel in California. On the other hand, the evidence suggests that the relevant documents are in the United Kingdom. The only evidence before the Court shows that a United Kingdom based Intel entity purchased ZiiLabs' "engineering resources and assets related to its UK subsidiary ZiiLABS Limited (formerly known as 3DLABS Limited)." (Doc.

No. 75 at 5 n.6 (citing Doc. No. 1-12 at 7); Doc. No. 88-1 ¶ 20 ("ZiiLabs sold the majority of the assets of 3DLabs (UK) to Intel Corporation (UK) Limited, which continues to maintain and operate a facility in the United Kingdom.").)  Because the ZiiLabs' subpoena seeks information on former 3DLabs inventions, the Court finds that these documents are most likely in the United Kingdom.  (*See, e.g.*, 6,977,649, at [75] (listing David Baldwin and Simon Moore from "GB" as inventors).)

**Financial Documents**

The Court finds that Samsung's financial documents are located in Texas and New Jersey and that Apple's financial documents are located in California.  The only dispute concerns where Intel maintains the financial documents relating to its business agreement with ZiiLabs.

The Court finds that STA's financial documents are more accessible from Marshall.  STA is located in Richardson, Texas, and operates as a sales division for SEC mobile devices in the United States.  STA "maintain[s] a finance and sales department" that "manages sales, [] revenue metrics, and spending." (Doc. No. 88-3 at 37:13–18.)  STA also "tracks revenues and costs for the business" and "track[s] volume of sales" of Samsung devices in the United States.  (Doc. No. 88-3 at 57:15–19.)  The relevant portion of Richardson is in the Eastern District of Texas and closer to Marshall than to the Northern District of California.

The Court finds that SEA's financial documents are marginally more accessible from Marshall.  SEA is located in Ridgefield Park, New Jersey, and conducts sales and marketing activities in the United States for Samsung computers and some Samsung tablets.  (Doc. No. 75-4 ¶ 4.)  The evidence before the Court suggests that SEA, like STA, tracks the sales of Samsung products in the United States.  (Doc. No. 88-3 at 27:19–21, 28:23–29:4.)  Ridgefield Park is

distant from both the Eastern District of Texas and the Northern District of California, but is closer to Marshall than it is to the Northern District of California.

The Court finds that Apple's financial documents are more accessible from the Northern District of California. Apple states that its marketing activities are led by teams based in Cupertino, California. (Doc. No. 75-1 ¶ 6.) Apple also states that its employees in Cupertino procure the accused GPUs from third-party vendors. (Doc. No. 75-1 ¶ 10; Doc. No. 93-3 at 1.) Documents relating to the purchase of SoCs or GPUs in California include documents on "pricing, negotiations, availability of supply, [and] the quality of the supply." (Doc. No. 88-14 at 61:1–7.) Cupertino is in the Northern District of California and is closer to the Northern District of California than to the Eastern District of Texas.

Finally, the Court finds that neither party has provided evidence on where the documents relating to the Intel-ZiiLabs business agreements are located. Samsung and Apple assert that these documents are in California because "shortly after filing this case, ZiiLabs served a subpoena on Intel's NDCA headquarters" seeking documents covering "agreements between ZiiLabs, Creative, 3DLabs, and Intel." (Doc. No. 75 at 5.) ZiiLabs responds that these subpoenas are directed at documents in the United Kingdom. (Doc. No. 88 at 10.)

The Court finds that the evidence on this issue is inconclusive. The Court agrees with Samsung and Apple that ZiiLabs' subpoena was served on Intel in California. The Court also agrees with ZiiLabs that these documents are likely located abroad. For example, the evidence shows that three years ago a United Kingdom Intel entity purchased a United Kingdom ZiiLabs entity. (*See* Doc. No. 88-1 ¶ 20 ("In 2012, ZiiLabs sold the majority of the assets of 3DLabs (UK) to Intel Corporation (UK) Limited, which continues to maintain and operate a facility in

the United Kingdom."); *see also* Doc. No. 1-12 at 7 (stating that the press release was issued

from ZiiLabs' parent in Singapore on November 19, 2012).)

### 2. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a

transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). In assessing this

factor, the Court considers the convenience of the party and non-party witnesses. The

convenience of the non-party witnesses carries the greatest weight in the analysis. *Aquatic*

*Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990); *see*

*also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed.

2012). "A district court should [also] assess the relevance and materiality of the information the

witness may provide" but should not require the movant to identify "key witnesses," or show

"that the potential witness has more than relevant and material information . . . ." *In re*

*Genentech*, 566 at 1343–44.

Samsung and Apple claim that most of the witnesses are located in California because

"[e]mployees of the third-party GPU suppliers are the most knowledgeable [witnesses]" and

"[a]ll of the third parties that supply the accused GPUs are headquartered in the NDCA or have

facilities in the NDCA." (Doc. No. 75 at 11.) Samsung and Apple further claim that Apple has

four witnesses with "unique relevant knowledge" in California and that Samsung's employees

would find trial in California more convenient because there are more flights from Seoul to

California than Seoul to Texas. (Doc. No. 75 at 12; Doc. No. 75-1 ¶ 12.)[8, 9]

---

[8] Samsung and Apple assert that Creative Labs and Intel employees likely reside in the Northern
District of California and may "possess unique knowledge" about the agreements relevant to this
case. (Doc. No. 75 at 11.) The Court addressed this issue above. The Court agrees with
Samsung and Apple that ZiiLabs' subpoena was served on Intel in California but the evidence
suggests that the documents sought by ZiiLabs are located in the United Kingdom. Indeed, the

On a whole, the Court finds that this factor is neutral as to transfer. The Samsung and third-party technical witnesses are located abroad and in Massachusetts, California, and Alabama. Any relevant Apple technical witnesses are located in California and Texas. This factor turns on the location of the these technical witnesses because neither side seriously disputes that Samsung's financial witnesses are in Texas and New Jersey and Apple's financial witnesses are in California.

**Third-Party Technical Witnesses**

The parties do not dispute that employees at Imagination, AMD, and NVIDIA, may be third-parties witnesses with technical knowledge that is relevant to this case.[10] The parties also do not dispute that the inventors of the asserted patents may be third-party witnesses who are similarly relevant to this case. The Court finds that the third-party witnesses and inventors are located in the United Kingdom, Canada, Massachusetts, California, Australia, and Alabama.

The evidence shows that Imagination is headquartered in the United Kingdom and Imagination's technical witnesses are located there as well. According to Imagination, "the persons who interfaced with Apple regarding the Imagination Apple Processors and who may

---

documents ZiiLabs seeks apparently relate to the sale of a former ZiiLabs United Kingdom subsidiary to Intel Corporation (UK) Limited "which continues to maintain and operate a facility in the United Kingdom." (Doc. No. 88-1 ¶ 20.) The Court has insufficient evidence to determine if two individuals employed by another subsidiary of ZiiLabs' grandparent corporation have knowledge that is relevant to this case. The Court, however, gives no weight to ZiiLabs' bare statement that these two individuals have no "unique knowledge specifically relevant to this case." (Doc. No. 88-1 ¶ 23.)

[9] The Court rejects both parties' repeated identification of witnesses as "unique." The Federal Circuit requires parties to identify witnesses with "material" information to a case. *In re Genentech*, 566 at 1343–44. "Materiality" carries legal significance. "Uniqueness" does not. Many witnesses with "unique" and "relevant" information may not have "material" information.

[10] The Court recognizes that Qualcomm and ARM are also relevant to this dispute, but as addressed earlier the parties have not provided evidence on where Qualcomm's or ARM's technical witnesses are located.

have knowledge relevant to this Action are primarily [located] outside of the United States." (Doc. No. 75-2 ¶ 6.)  Additionally, "the persons who interfaced with Samsung regarding the Imagination Samsung Processors and who may have knowledge relevant to this Action are not located in the United States."  (Doc. No. 75-2 ¶ 8.)

The Court finds that AMD's technical witnesses are located in Canada and Massachusetts and that NVIDIA's technical witnesses are located in California.  The evidence shows that Apple's "primary contacts" with AMD are "in the Toronto, Canada area, as well as in Massachusetts."  (Doc. No. 88-14 at 74:11–13.)  No evidence shows where Samsung's contacts with AMD are located.  The evidence also shows that Apple's "primary contact" with NVIDIA is in California.  (Doc. No. 88-14 at 74:13–14.)  No evidence shows that a Samsung product accused of infringement contains an NVIDIA GPU.  (Doc. No. 75-7 ¶ 4.)[11]

The Court notes that the evidence shows that the inventors live in Alabama, the United Kingdom, and Australia.  Neither party disputes that Mr. Deming, an inventor of '637 patent, lives in Alabama, that Osman Kent lives in the United Kingdom, and that James Holt lives in Australia.  (Doc. No. 106-1 at 1.)  The evidence further suggests that other inventors, including David Baldwin, Nick Murphy, and Simon Moore, live abroad.  (Doc. No. 106-1 at 1 ("ZiiLabs

---

[11] The evidence before the Court shows that ZiiLabs served fifty nine infringement contentions directed at Samsung and Apple mobile devices, tablets, laptop and desktop computers.  Five infringement contentions accuse NVIDIA GPUs and specifically accuse Apple OSX products and the iMac "Core i5 and i7" and the MacBook Pro "Core i7."  (Doc. No. 75-7 ¶ 4.)  The Court also recognizes that substantial evidence suggest that Samsung's contacts with AMD, if any, are not in California.  SEC states that Samsung's engineers in Korea select GPUs from third-party vendors, and STA states it technical employees in California are mainly "responsible for software content and services and applications that live on the device."  (Doc. No. 75-3 ¶ 3; Doc. No. 88-3 at 21:10–21.)

does not oppose Defendants moving for letters of request pursuant to the Hague Convention seeking evidence from Mr. Baldwin, Mr. Murphy, and Mr. Moore.").)[12]

**Samsung and Apple Technical Witnesses**

The parties do not dispute that some Samsung's technical witnesses are located in Korea because "SEC employees in Korea are responsible for developing, designing, testing, manufacturing, and assembling Samsung's computers, smartphones, and tablets." (Doc. No. 75-3 ¶ 3.) The parties' disagreement centers on the location of Apple's technical witnesses.

Apple has identified technical witnesses in California and in Texas. Apple's witnesses in California include: Jeremy Sandmel, Richard Schreyer, Gokhan Avkarogullari, and Rav Dhiraj. (Doc. No. 75-1 ¶ 12.) Mr. Sandmel supervises Messrs. Avkarogullari and Dhiraj who work on driver development for Imagination, AMD, and NVIDIA GPUs. (Doc. No. 88-14 at 41:17–23.) Mr. Schreyer "implement[s] the OpenGL framework in Apple's [products]." (Doc. No. 88-14 at 18:10–12.) Apple's witness in Texas is Brett Chambers. Mr. Chambers' work involves "implementing the Imagination graphics processor . . . architecture into silicon." (Doc. No. 88-14 at 24:10–16, 24:6–9.)

On these facts the Court finds that Apple has relevant witnesses in California and Texas. The Court accepts Apple's claim that individuals who develop drivers for GPUs may possess knowledge that is relevant to this case. But the Court rejects Apple's claim that Mr. Chambers has no knowledge relevant to this case. The Court rejects the implication that Mr. Chambers'

---

[12] The Court gives no weight to ZiiLabs' claims that David Young, an inventor, lives in Orlando, Florida because ZiiLabs has provided no evidence in support of this claim and Samsung and Apple have not had an opportunity to dispute it.

work of "translating the Imagination-provided design into silicon" is a routine task that requires minimal technical expertise. (*See, e.g.*, Doc. No. 93 at 3 n.5.)[13]

The Court notes that it accepts Samsung's claim that Samsung SoCs are designed in Korea, but the Court also notes its reservations about the asserted irrelevance of SAS's activities in Texas. The bulk of the evidence shows that SAS fabricates chips. However, substantial evidence shows that SAS's Samsung Austin Research Center ("SARC") division designs or researches GPUs or SoCs in Texas. (*See, e.g.*, Doc. No. 88-8 at 1 ("[W]e are seeking someone to integrate and coordinate a number of intricate sub-blocks in the code shader subsystem of a low-power Graphics Processing Unit.").) Indeed, SAS states that SARC does not perform "design and development" but performs "research" on chips. (Doc. No. 88-4 at 71:20–21, 72:14–73:19.)

### 3. Availability of Compulsory Process to Secure the Attendance of Witnesses

The Court may command a person who "resides, is employed, or regularly transacts business in person" in Texas to attend trial in Marshall if she "would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). The Court also may command a person to attend a deposition at a location "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45 (a)(2); *see id.* (c)(1)(A), (d)(3)(a). Party witnesses normally do not require compulsory process. The Court's analysis of this factor tends to focus on third-party witnesses.

Samsung and Apple claim that the Northern District of California will have absolute subpoena power over three sets of witnesses. First, it will have subpoena power over "[a]ll of the third parties that supply the accused GPUs" because they are "headquartered in the NDCA or

---

[13] The Court accepts ZiiLabs' argument that Apple has a facility in Orlando, Florida, that plays some role in graphics processor design, development, and research. (Doc. No. 88-17 at 1–2.) But even considering the location of Apple's Orlando facility, the Court finds that this factor is neutral as to transfer.

have facilities in the NDCA." (Doc. No. 75 at 10.) Second, the Northern District of California will have subpoena power over the Intel witnesses who have "information regarding Intel's acquisition of a part of ZiiLabs' business and Intel's license to ZiiLabs' patent portfolio." (Doc. No. 75 at 10.) Finally, the Northern District of California will have subpoena power over some prior art witnesses. (Doc. No. 75 at 10.)

ZiiLabs claims that the Eastern District of Texas will have absolute subpoena power over third-party witnesses who are former employees of Apple and Samsung. For example, ZiiLabs claims that Mark McDermott lives in Texas and "recently left Apple after working as a Senior Director specializing in silicon chip design." (Doc. No. 88 at 12.) ZiiLabs also claims that Paul Golden, a former Chief Marketing Officer for Samsung, lives in Texas and "claims responsibility for launching Samsung's 'Galaxy' brand." (Doc. No. 88 at 12.)

The Court finds that this factor weighs slightly in favor of transfer. The evidence suggests, as the Court stated above, that the bulk of the relevant third-party witnesses are located in the United Kingdom and Canada. But this factor weighs in favor of transfer because ZiiLabs already subpoenaed Intel in California. The Court also recognizes that witnesses from NVIDIA may need to be compelled to attend trial.

The Court, however, rejects both parties' arguments that former employees factor into this analysis. The Court rejects Samsung and Apple's argument that Craig McHugh and Suzanne Rufflo, who formerly worked at another subsidiary of ZiiLabs' grandparent corporation, possess relevant information that is unavailable to a current ZiiLabs employee. Similarly, the Court rejects ZiiLabs' argument that Mr. Golden and Mr. McDermott possess relevant information that is unavailable to a current Samsung or Apple employee.

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

The Court finds that this factor weighs slightly against transfer. SAS, SEA, STA, and Apple received summons from ZiiLabs in April 2014. (Doc. Nos. 15, 16, 34, 35.) Samsung and Apple filed this motion to transfer venue in October 2014 only after they had received ZiiLabs' infringement contentions, obtained several extensions of time, filed a motion to dismiss, and received a docket control order. (Doc. No. 47 (moving to dismiss); Doc. No. 23 (moving to extend time); Doc. No. 60 (serving infringement contentions); Doc. No. 68 (entering a docket control order).)

## C. Public Interest Factors

### 1. Local Interest in Having Localized Interests Decided at Home

Samsung and Apple claim this factor weighs in favor of transfer because Apple and several GPU suppliers are based in California. ZiiLabs claims that this factor weighs against transfer because STA and SAS are based in Texas and Apple has facilities in Florida and Texas. The Court finds that this factor weighs against transfer because Samsung sells mobile devices through offices located in this District. Importantly, the Court also finds that this factor weighs against transfer because Samsung and Apple conduct significant semiconductor research in this state.

STA employs nearly 1,000 people in the Richardson area. (Doc. No. 88-3 at 22:1–5.) These employees focus primarily on the sales and marketing of Samsung products in the United States. (Doc. No. 88-3 at 35:6–13.) SAS employs nearly 2,300 people in the Austin area. (Doc. No. 88-4 at 14:18–25.) These employees focus primarily on the manufacture of Apple's SoCs. (Doc. No. 88-4 at 46:1–2.) Apple also has been expanding its chip design groups in Texas: it purchased a Texas chip design company in 2012 and built a new Texas campus in 2014. (Doc.

No. 88-11 at 3; Doc. No. 88-10 at 2; Doc. No. 88-13 at 1 (stating Apple will double the size of its facility in Austin in ten years); *see also* Doc. No. 88-14 at 31:20–32:2, 32:17–19 (stating that Flextronics a third-party firm in the Austin area assembles one of the Apple products accused of infringement).)

### 2. Administrative Difficulties Flowing From Court Congestion

The Court finds that this factor is neutral as to transfer because the Eastern District of Texas and the Northern District of California have similar average times to trial. The Eastern District of Texas has a time to trial of 25.5 months. (Doc. No. 75-21 at 2.) The Northern District of California has a time to trial of 27.5 months. (Doc. No. 75-21 at 3.)

### 3. Familiarity of the Forum With the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

The parties do not dispute that these two factors are neutral as to transfer. (Doc. No. 75 at 15; Doc. No. 88 at 15.)

## CONCLUSION

A motion to transfer venue should only be granted upon a showing that one venue is "clearly more convenient" than another. *In re Nintendo Co.*, 589 F.3d at 1197; *In re Genentech*, 566 F.3d at 1342. After weighing the evidence as a whole, the Court finds that the Northern District of California would not be "clearly more convenient" for this litigation. Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, LLC, Samsung Austin Semiconductor, LLC, and Apple Inc.'s Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (Doc. No. 75) is **DENIED**, and Defendants Motion for Leave to File Supplemental Brief in Support of Defendant' Motion to Transfer (Doc. No. 350) is **DENIED AS MOOT**.

**SIGNED this 9th day of September, 2015.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE